UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAYQUAN MARTELL JACKSON,

                Petitioner,             Case No. 2:19-cv-12326

v.

                                   Paul D. Borman
                                   United States District Judge

ROBERT VASHAW,

                Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Dayquan Martell Jackson filed this habeas case under 28 U.S.C. §

2254. (ECF No. 1.)  Jackson is serving a 12-to-22 year prison sentence as a result of

his Wayne County Circuit Court bench trial conviction of assault with intent to

commit murder, MICH. COMP. LAWS § 750.83, carrying a concealed weapon,

MICH. COMP. LAWS § 750.227, and possession of a firearm during the

commission of a felony, MICH. COMP. LAWS § 750.227b.  (ECF No. 8-1.)

The petition raises two claims: (1) Jackson was denied the effective assistance

of counsel when his attorney failed to present a firearms expert at trial; and (2)

insufficient evidence was presented at trial to prove Jackson's identity as the

perpetrator.  (ECF No. 1.)  Because both claims are without merit, the Court denies

the petition. The Court also denies a certificate of appealability and denies leave to appeal in forma pauperis.

## I. Background

The Michigan Court of Appeals summarized the evidence presented at Jackson's bench trial as follows:

> Around midnight on January 16 or 17, 2016, Dayvonta Winston was shot in the face and in the hand after a grey vehicle pulled up on the right side of his vehicle while he was stopped at a traffic light. Winston testified that just before the shooting, he had looked at the vehicle to his right. He identified Jackson as sitting in the front passenger seat. According to Winston, Jackson raised the gun, so he turned away and was shot. Winston fled his vehicle and headed to a nearby gas station. When the police arrived, he identified Jackson as the individual who shot him. The police collected a number of .40 caliber shell casings from the street, but were unable to recover the gun that fired the shots.

> In addition to testimony about the shooting itself, the prosecution presented testimony about the events leading up to the shooting. Winston testified that he had known Jackson for at least five years, and he stated that his sister had been dating Jackson for about a year before the shooting. Winston explained that in the hours before the shooting, Jackson had called him and told him to pick up his sister, who lived with Jackson and Jackson's grandmother. When he arrived at the house, his sister and Jackson were having a verbal altercation. The record reflects that they may have also had a physical altercation either as Winston was arriving or before he arrived. Winston took his sister and left. Later that night, Jackson called him and Winston told him that he was at a house on Lamphere, Street in Detroit, Michigan. About 30 minutes later, Winston stated he saw Jackson pull up in a four-door grey car. He stated that Jackson spoke to him aggressively with what he characterized as "fighting words" and then left. The shooting occurred shortly thereafter.

Jackson presented testimony from Jalen Harper, who testified that he knew Winston and Jackson. He first testified that he was at the house on Lamphere Street with Winston, and stated that Jackson never drove by them while he was there. He also testified that, later that night, he was in the vehicle in front of Winston's when he saw a four-door vehicle pull alongside Winston's vehicle. He testified that the light then changed color, so he drove through it. He then heard gunshots and saw the four-door car drive past. He stated that he was 100% positive that Jackson was not in the driver's seat or the front passenger's seat. Jackson also presented testimony from his grandmother, who testified that she was awake until around 2:00 a.m., and that Jackson had never left the house that night. Jackson's mother also testified that Jackson was still at his grandmother's house when she left it around midnight. Jackson's mother's husband testified similarly. In addition, during closing argument, Jackson's lawyer argued that based on where the shell casings were located, it would have been impossible for the shots to have been fired from the passenger side of the grey vehicle.

*People v. Jackson*, No. 336745, 2018 WL 1348007, at *1 (Mich. Ct. App. Mar. 15, 2018).

Following his conviction, Jackson was appointed appellate counsel who filed a brief on appeal that raised what now forms his first habeas claim. (ECF No. 8-9, PageID.453-479.)  In support of the claim, appellate counsel obtained an affidavit from former Michigan State Police firearms examiner David E. Balash.  (ECF No. 8-9, PageID.488-489.)  Balash stated that if the shooter fired a semi-automatic weapon from the front passenger seat through the driver's side window, the shell casings probably would have landed in the car and would not have been found on the street.  (*Id.*.)

Jackson later filed his own supplemental pro se brief that raised what now forms his second habeas claim.  (ECF No. 8-9, PageID.559-581.)  He attempted to support the claim with an affidavit by Titeanna Winston, in which she recanted her trial testimony that she saw Petitioner leave in a car before the shooting. (ECF No. 8-9, PageID.583). Winston also stated in the affidavit that her brother told her that he did not see who was in the car that fired the shots. (*Id.*)

The Michigan Court of Appeals affirmed Jackson's conviction in an unpublished opinion that denied both claim on the merits. *Jackson*, 2018 WL 1348007, at \*4. The Michigan Supreme Court subsequently denied leave to appeal by form order. *People v. Jackson*, 919 N.W.2d 404 (Mich. 2018) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established Supreme

Court law occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Analysis

A. Ineffective Assistance of Counsel

Jackson's first claim asserts that his trial attorney was ineffective for failing to have a firearms expert testify at trial that if the gunman fired his weapon from the passenger seat through the driver's window, then the shell casings would have landed inside the car and not in the street. (ECF No. 1, PageID.5-6, 32-40.) The claim was supported in the state courts by the affidavit of a former Michigan State Police firearms expert. (*Id.*) Petitioner reasons that such testimony would have been critical to the defense because it would have undermined the victim's testimony regarding how the crime occurred. (*Id.*)

The Michigan Court of Appeals presumed the allegations in the expert's affidavit as true, and it found that counsel performed deficiently by failing to use such testimony in Jackson's defense. The state court found, however, that Jackson failed to demonstrate that his defense was prejudiced by his counsel's deficient performance:

> [E]ven if Jackson's lawyer erred by not calling an expert witness, Jackson cannot establish that there is a reasonable probability that the outcome would have been different had an expert been called. The trial court chose not to credit Harper's testimony that Jackson was not in the grey vehicle because the court found Winston's eyewitness identification testimony was credible. Winston testified that he had known Jackson for about five years and saw him two times before the shooting: first at Jackson's grandmother's house and then in a grey-four door vehicle a short time before the shooting. He also testified that just before he was shot, he saw Jackson raise a gun while seated in the passenger seat of a grey vehicle that had pulled up beside him. After the shooting, Winston told police that he knew the person that shot him and that it was Jackson. Winston also identified defendant as the shooter in court.
>
> Further, Jackson's lawyer elicited testimony from a responding police officer that the only casings he found were in the street near the scene of the crime. Jackson's lawyer relied on this evidence to argue in his closing argument that the bullet casings would have fallen in the shooter's car, not on the street, had the passenger been the person shooting at Winston. Thus, although not supported by an expert witness, the bullet-casings defense was before the trial court and was supported by reasonable inferences drawn from the evidence presented. Despite that evidence and Jackson's lawyer's argument, the trial court convicted Jackson of shooting Winston on the basis of Winston's identification. Given that the trial court credited Winston's identification of Jackson as the shooter, we conclude that the result of the proceedings would not have been different had Jackson introduced testimony from a firearms expert to bolster the bullet-casings defense.

*Jackson*, 2018 WL 1348007, at *3.

This decision did not involve an unreasonable application of the clearly established Supreme Court standard. A defendant is required to satisfy a two-prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The state court found that Jackson satisfied the first prong.

The second prong requires a defendant to show that the deficient performance prejudiced his defense. *Id*. at 689. To satisfy this standard, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *Strickland* places the burden on the defendant to demonstrate prejudice. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in

tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).

The Michigan Court of Appeals did not unreasonably apply the *Strickland* prejudice standard in denying Petitioner's claim. This was not a case of stranger identification. The victim knew Jackson for about five years. He saw him earlier in the day, under circumstances suggesting a motive for the shooting. He later identified Jackson as the person who extended his arm at him while holding a handgun from the other vehicle immediately before the shooting. The victim turned his head and threw his hand up to guard his face as the shots were fired, so he did not see exactly where Jackson's arm was positioned when the shots were fired. It is entirely consistent with the evidence presented at trial that Jackson may have reached over the driver and extended his hand outside the driver's window before firing. The victim did see that the driver leaned back when Jackson pointed the gun at him. (ECF No. 8-5, PageID.164-166.)

Moreover, as noted by the Michigan Court of Appeals, defense counsel referred to the fact that the casings were found on the street during closing argument as a reason to doubt the victim's description of the shooting. The trial court, sitting as trial of fact, was nevertheless convinced that the victim's identification of Jackson as the shooter was credible. (ECF No. 8-7, PageID.393-395.) These two points allowed the state court to reasonably reject Jackson's claim on *Strickland's* prejudice

prong.  Jackson has therefore failed to demonstrate entitlement to habeas relief based on this claim.

B. Insufficiency of the Evidence

Jackson's second claim for relief asserts that insufficient evidence was presented at trial to establish his identity as the perpetrator.  (ECF No. 1, PageID.7-8, 41-47.)  He attempted to support the claim in the state court with an affidavit from the victim's sister, claiming that she never saw Jackson get into a car at the relevant time, and that her brother told her that he did not know who fired the shots.  (ECF No. 8-9, PageID.583.)

After reciting the familiar constitutional standard, the Michigan Court of Appeals rejected the claim on the merits:

> Jackson challenges only the identification element. He asserts that there was no direct evidence regarding who shot Winston because Winston never testified that he actually saw Jackson shoot at him. Jackson further asserts that the prosecution failed to present any physical evidence including fingerprints, DNA, a gun, or matching ballistics connecting him to the incident. However, direct evidence is not necessary. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v. Nowack*, 462 Mich. 392, 400 78 (2000) (quotation marks and citation omitted). Here, Winston testified that a vehicle pulled up beside him, he saw Jackson in the front passenger seat, Jackson raised a gun, and then, after Winston looked away, he was shot in the face and the hand. Viewed in the light most favorable to the prosecution, this evidence allows for a reasonable inference that Jackson shot Winston. See *Hawkins*, 245 Mich. App. at 457. For the same reasons, there is no merit to Jackson's claim that the trial court erred by denying his motion for a directed verdict because there was insufficient evidence identifying him as the shooter. See *People v.*

> *Schrauben*, 314 Mich. App. 181, 198 (2016) (stating that a challenge to a court's decision on a motion for directed verdict is reviewed in the light most favorable to the prosecution to determine whether the essential elements of the crime were proven beyond a reasonable doubt).

*Jackson*, 2018 WL 1348007, at *4.

The question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Accordingly, Jackson's reliance on new evidence, such as Ms. Winston's affidavit, does not speak to the constitutional sufficiency of the evidence.

Under the *Jackson* standard, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 318-19 (internal citation and footnote omitted)(emphasis in the original). For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Limiting review to the evidence presented at trial, the Michigan Court of Appeals did not unreasonably apply the *Jackson* standard. The victim positively identified Jackson at trial as the man who pointed the handgun at him immediately before the shots were fired. The trial court made a finding of fact that the victim's

identification testimony credible. (ECF No. 8-7, PageID.393-395.) A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). And "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis*, 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted).

As the state courts reasonably applied clearly established Supreme Court law with respect to both of Jackson's claims, the habeas petition will be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Jackson must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Jackson has failed to demonstrate entitlement to habeas relief because both of his claims are devoid of merit.

Finally, Jackson is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: July 17, 2020                          s/Paul D. Borman
                                                      Paul D. Borman
                                                      United States District Judge